The Milwaukee Electric Railway & Light Co. vs. Bradley and others.

BARDEEN, J., took no part.

---

The Milwaukee Electric Railway & Light Company, Appellant, vs. Bradley and others, Respondents.

*December 7, 1900 — January 8, 1901.*

*Injunctional order: Dissolution: Appeal: Stay: Discretion.*

1. Secs. 3069, 3042, Stats. 1898, give the right of appeal from an order granting, refusing, modifying, or dissolving an injunction, and limit the time for taking the appeal to thirty days from the date of the service, by either party to the action upon the other, of a copy of the order with a written notice of the entry of the same.

2. Sec. 3061, Stats. 1898, permits the trial court to stay the effect of an order of the kind above referred to on an appeal therefrom if, upon the making of the order, immediate notice of the appeal be given and within three days thereafter the appellant serves an undertaking upon the adverse party as therein provided.

The Milwaukee Electric Railway & Light Co. vs. Bradley and others.

3. Sec. 3061, Stats. 1898, relates to the condition upon which an order appealed from may be continued pending the appeal, and does not affect the right of appeal or the time within which such right must be exercised.
4. *Punch v. New Berlin*, 20 Wis. 189, was overruled by *Couldren v. Caughey*, 29 Wis. 317, which is in harmony herewith.
5. It is a general but not a universal rule that where all the equities of the complaint upon which a temporary injunction has been granted are specifically and positively denied by verified answer, the injunction will be dissolved.
6. Such general rule does not apply where a continuance of the injunction is reasonably necessary for the protection of the rights of either party to the litigation during the pendency thereof.
7. If it be clear that the plaintiff may probably recover, and that if he be left at the mercy of his adversary pending the litigation the purpose of such litigation may be defeated or he may probably suffer irreparable loss, it is within judicial discretion to so control the situation as to prevent that result so far as practicable, having regard for the probable rights of the defendant as well as those of the plaintiff.
8. There is no arbitrary rule that displaces judicial discretion to control the conduct of parties to litigation so the purpose thereof will not be materially jeopardized. A refusal to exercise such power where there is clear necessity for it is either a misconception of judicial duty or an abuse of it.

[Syllabus by MARSHALL, J.]

APPEAL from orders of the circuit court for Milwaukee county: EUGENE S. ELLIOTT, Circuit Judge. *Reversed.*

Action to restrain defendants from interfering with plaintiff's business by endeavoring to ride upon its street cars without paying the fare demanded pursuant to its lawful regulations, and to judicially establish the validity of such regulations; also to enjoin the prosecution of numerous suits brought against the plaintiff growing out of its enforcing such regulations, and to enjoin the commencement of further suits of the same character.

The facts stated in the complaint are in substance as follows:

Plaintiff is a duly organized and existing corporation under

the laws of the state of Wisconsin and as such possesses all the usual powers of a street-car company, in respect to owning, maintaining, and operating a street-car line from a point at the western limits of the city of Milwaukee to and through the city of Wauwatosa, and to determine the compensation to be charged for services rendered, within reasonable limits and according to public franchises upon which its rights depend. Pursuant to franchises which plaintiff was and is empowered to exercise, it has operated and is operating a railway line from the western limits of the city of Milwaukee westerly on Wells street through the town of Wauwatosa to the corporate limits of the city of that name, thence in a west, north, and northwest course in such city to the center line of Main street therein, and to a point beyond and west of the limits of such city.

Pursuant to such franchise plaintiff has established a reasonable compensation to be paid by persons receiving the benefits of travel by means of its cars on the road mentioned, to wit: Five cents for a trip from any point on the line in the city of Wauwatosa to the Hawley road, which crosses plaintiff's railway line about seventy rods east of the easterly limits of said city, and a second fare of five cents for a continuation of the trip to any point in the city of Milwaukee reached by the plaintiff's system of street-railway lines; five cents for the passage from any point on the Wells street line in the city of Milwaukee to the Hawley road, and an additional fare of five cents for a continuation of the passage to any point west of said road reached by either of plaintiff's lines in the city of Wauwatosa; five cents for the passage from any point on the line at or west of the westerly limits of the city of Milwaukee to the Hawley road, and an additional fare of five cents for a continuation of the passage to any point on said route west of such road; five cents for the passage from any point on the line between the division point at the Hawley road and the westerly limits of the city

of Milwaukee to the westerly limits of the city of Milwaukee, and an additional fare of five cents for a continuation of the passage to any point within the city of Milwaukee. The Hawley road crossing was determined by plaintiff to be the most convenient and just division point for making an additional charge of five cents, having regard to the convenience of its customers and the orderly conduct of its business.

On September 18, 1899, defendant *Bradley*, while a passenger on one of plaintiff's cars, refused to pay the additional fare of five cents after reaching the point of division mentioned, and was thereupon compelled to leave the car, no unnecessary violence being used to that end. On October 20, 1899, said *Bradley* commenced an action in justice's court against plaintiff to recover damages for his ejection from the car, upon the theory that plaintiff had no right to charge him the additional fare, and such proceedings were thereafter had in such action that on December 6, 1899, judgment was rendered in his favor for $49.43, from which an appeal was duly taken to the superior court of Milwaukee county, where the action is now pending. On December 21, 1899, said *Bradley* was again ejected from one of plaintiff's cars under circumstances the same as in the first instance, and on December 29th he commenced an action before a second justice of the peace, founded on a second alleged violation of his rights, which action is still pending. On December 27, 1899, said *Bradley* was a third time ejected from one of plaintiff's cars under circumstances the same as before, and he thereupon commenced a third action for damages before a third justice of the peace, which action is still pending; and he also instituted criminal actions before the same justice, against the conductor of the car and the motorman thereof, for assault and battery, which said actions are still pending.

All of the actions mentioned except the first were instituted for the purpose of vexing and annoying the plaintiff.

Such first action was amply sufficient to test the right of the controversy between plaintiff and its patrons in respect to the lawfulness of the additional fare demanded by it.

Since December 27, 1899, defendant *Bradley* has refused to pay the disputed fare for being carried as a passenger on plaintiff's cars, and has given and is giving out that he will not pay the same, and that each time plaintiff's servants deny him the privilege of riding without paying such fare he will institute an action for damages in justice's court, or institute criminal proceedings against plaintiff's servants, or both, as the facts from his standpoint may warrant. Neither the actions already commenced nor such actions and any others that may be commenced can be consolidated, from the fact that such pending actions are in different jurisdictions. Plaintiff will be put to great and useless expense and annoyance in trying a large number of independent actions each involving the same question, and will suffer great and irreparable loss if compelled to do so. A single action is all that is necessary to settle the entire controversy.

Plaintiff is informed and believes that *Bradley* justifies his conduct upon the claim that some ordinance or ordinances passed by the city or the town of Wauwatosa, granting certain rights to the Milwaukee Heat, Light & Traction Company or some other company, upon which plaintiff's right to operate the railway line in question depends, require the plaintiff to charge but a single fare for a single trip over its entire line west of the westerly limits of the city of Milwaukee.

The conduct of said *Bradley* has caused the other defendants mentioned to refuse to pay the fare demanded in accordance with plaintiff's regulations. All the defendants have confederated and agreed together to refuse to pay the additional five-cent fare, and have accordingly so refused, and such refusals have in some cases resulted in the persons refusing being ejected from the cars. The defendants have

given out that they will continue refusing to comply with plaintiff's regulations as to the additional five-cent fare, and if ejected from its cars will follow the example of *Bradley* as to the commencement of civil and criminal actions. Such conduct, if allowed to continue as threatened, will so disturb plaintiff's business, and cause persons otherwise willing to pay the additional fare demanded to refuse to do so, as to inflict upon it irreparable injury.

The relief prayed for was as indicated in the stated purpose of the action. The complaint was verified, and upon a bond being given to secure the defendants from injury in case it should finally be determined that plaintiff was not entitled to the relief prayed for in the complaint, a temporary injunction was granted by a circuit court commissioner, restraining each and all of such defendants from doing any of the things complained of, including the prosecution of any of the actions for damages mentioned and the criminal actions, pending the final determination of this action.

Defendants *Bradley, Story, Perry, Wheeler, Laflin, Morse,* and *Gregg* answered jointly, admitting that plaintiff was lawfully operating a railroad line as alleged, but denied that it had the right to collect the disputed five-cent fares. The answer alleged in detail that plaintiff's rights as to fares are so limited that it cannot lawfully collect more than one five-cent fare for a single trip over any part of its line west of the westerly limits of the city of Milwaukee; that its insistence upon the right to collect two such fares is a violation of the rights of defendants; that the conduct of defendant *Bradley* was according to his legal rights; and that the actions commenced by him were commenced solely to vindicate such rights and not for the purpose of harassing or vexing plaintiff. The circumstances alleged as to the commencement of actions and the status thereof were all admitted, except it was said that the ejection from the car the last time was not preceded by any demand for the payment

of an additional five-cent fare or any refusal to pay such fare. It was admitted that each of the defendants had insisted and did insist that he possessed the right to use plaintiff's cars for travel without paying the disputed fare, and it was alleged that, except as to *Bradley* and *Story*, defendants had been permitted to ride without paying such fare upon their asserting to plaintiff's servants in charge of the car the right so to do. It was further admitted, in effect, as to each defendant, that he considered that any attempt to collect of him the disputed fare or to deny him the right to ride on plaintiff's cars unless he paid according to its demand for such fare was an invasion of his rights and gave him a cause of action for damages and justified him in commencing a criminal action in the event of his being forcibly ejected from the car. It was further admitted that plaintiff had been compelled to employ men for the sole purpose of enabling it to operate its cars and enforce the payment of the additional five-cent fares.

To support the allegations that the conduct of plaintiff in refusing the use of its cars except upon condition of the payment of the disputed fare was unlawful, the answer alleged that plaintiff's rights are measured by a franchise formerly owned by the Milwaukee & Wauwatosa Motor Railway Company, covering that part of its route between the westerly limits of the city of Milwaukee and the easterly limits of the city of Wauwatosa, and a franchise granted by the city of Wauwatosa to the Milwaukee Light, Heat & Traction Company, September 5, 1899, for that part of its line in the city of Wauwatosa, the road, however, having been theretofore constructed and put in operation. The terms of the first-mentioned franchise, as regards railway fares, do not appear by the answer. A copy of the last-mentioned franchise was made a part of the answer, but it contained no provision limiting the authority of the grantee in respect to railway fares unless there was such limitation in this clause: "The rights

hereby granted are expressly granted subject to all the du-
ties and obligations mentioned and described in an ordinance
of the town board of Wauwatosa dated May 11, 1891, to the
Milwaukee & Wauwatosa Rapid Transit Company." A copy
of the ordinance of May 11, 1891, was made a part of the
answer.  It contained this provision: "The rate of fare for
any distance upon the railroad of said company from the city
limits of the city of Milwaukee to the terminus of said com-
pany in the town of Wauwatosa shall not exceed five cents."
That franchise covered a route connecting with one of the
Milwaukee city street-car lines now part of plaintiff's sys-
tem, running westerly from the westerly boundary line of
the city of Milwaukee, for most of the way parallel with and
about one half mile north of the route particularly involved
in this action, to a point on the westerly side of the city of
Wauwatosa.  The road, as operated, bends southwesterly
before reaching the terminus, so as to reach a point a few
rods from the terminus of the southern route.  The branches
reach the point of intersection of franchise rights, but no con-
nection between the two lines as constructed exists.

It was alleged that the fare on the entire northern line
has always been five cents and no more, except for a short
interval when there was an attempt to make a division for
the collection of an additional five-cent fare at a point about
one quarter of a mile west of the westerly limits of the city
of Milwaukee instead of at said limits; but that upon plaint-
iff's attention being called to the quoted language in its
franchise it desisted from such attempt as to all persons.
using only the line or a part of it west of the westerly limits
of the city of Milwaukee.

It was further alleged that the regular fare was five cents.
on the entire southern route up to September 11, 1899, at
which time plaintiff arbitrarily changed the rate by fixing
a division point at the intersection of the route with the
Hawley road, as indicated in the complaint.   There were

further allegations to the effect that there was no good reason for making such change; that it does not serve any valuable purpose to plaintiff and is very prejudicial to the patrons of the railway line in the town and city of Wauwatosa, as it makes all who desire to travel on the line from any point east of the Hawley road to a point west of it, or from a point west of it to a point east of it, without in either case crossing the westerly boundary of the city of Milwaukee, pay two five-cent fares; and there are many persons so circumstanced that they are required to so travel, and that such is the case with defendants. The answer closed with a prayer for affirmative relief, including a dissolution of the temporary injunction and a permanent injunction against plaintiff's denying to defendants the use of its cars for travel without paying the disputed fare, and for temporary relief to that effect to last during the pendency of the action.

Defendants *Tomkins, Landolt,* and *Wright* answered separately in all essential particulars the same as *Bradley* and his associates. Defendant *Nethercut* answered to the effect, among other things, that he had not refused to pay the disputed fare nor had any dispute with plaintiff in regard to the matter in controversy, and that he had no interest in the litigation other than that of the citizens generally of the town and city of Wauwatosa. He further, by his answer, maintained the right of persons to refuse to pay the disputed fare, and the rights of the other defendants as alleged in their answers.

Five motions were made, corresponding to the five answers, to dissolve the temporary injunction. On such motions, in addition to the pleadings referred to, the following affidavits were read:

Affidavits by several members of the common council of the city of Wauwatosa and the mayor thereof, to the effect that in granting the franchise of September 5, 1899, they each and all believed that it required the grantee to permit

the use of its cars for a single five-cent fare for a trip over any part of the route either way between the westerly line of the city of Milwaukee and the westerly terminus of such route near the entrance to the Milwaukee county hospital for the insane west of the westerly boundary of the city of Wauwatosa.

The motions were opposed on the verified complaint, the several answers, and the following:

An affidavit by T. E. Mitten, superintendent of the operating department of plaintiff's business, to the effect that the change in the place of collecting the additional five-cent fare, from the westerly boundary line of the city of Milwaukee to the Hawley road, was a judicious change, having regard to the best interests of the patrons of the line in a general way, and the most reasonable arrangement for the conduct of that branch of its business, as well. Further, that the Milwaukee & Wauwatosa Motor Railway Company originally built the railway line which forms a part of the route in question, and that plaintiff is maintaining and operating that part of its route under the rights formerly possessed by such company and not under any franchise from the town or city of Wauwatosa.

An affidavit by Mitten to the effect that defendant *Nethercut* was joined as defendant because plaintiff was credibly informed that he was active in promoting the idea that its conduct in collecting the additional fares was illegal and need not be submitted to by its patrons, and that he made a statement which was published in one of the city newspapers, to the effect that the charter granting the right of way for the railway line expressly specified that the company could not collect more than one five-cent fare between the westerly limits of the city of Milwaukee and the westerly terminus of the line; that he had stated that the people of the community of which he was a member were fighting for a principle and actuated by the same spirit that led the colonists to throw tea overboard in Boston Harbor.

An affidavit by F. H. Whitney, secretary of plaintiff, presenting a map of plaintiff's two lines of street railroad in the city and town of Wauwatosa, and copies of papers showing that its right to operate a continuous line of railroad from the westerly limits of the city of Milwaukee on Wells street to the city of Wauwatosa is based on a franchise granted by the town board of Wauwatosa, June 4, 1891, to the West Side Railway Company, to extend what is now the Wells street line in the city of Milwaukee from the westerly limits of the city a very short distance to an intersection with Thirty-Sixth street; that such franchise obligated the grantee to include such extension in the line of railway of which it was to form a part, charging the same fare for a trip on any part of the continuous line; that the balance of the line, forming a continuous line to the city limits of Wauwatosa, was covered by a franchise acquired by the Milwaukee & Wauwatosa Motor Railway Company to construct and operate a railway line under the general railroad laws of the state.

An affidavit by John I. Beggs, plaintiff's manager, to the effect that plaintiff has not at any time charged to its patrons a greater fare than five cents for a trip from any point in the city of Wauwatosa to any other point in said city; nor from any point on the route covered by the franchise of September 6, 1899, to any other point on said line, or any point on the line covered by the franchise of May 11, 1891, or the extension of such franchise by the franchise of July 2, 1896, or the franchise of April 24, 1899; that it was his understanding of the franchise of September 6, 1899, that it was to have the effect of extending the franchise of May 11, 1891, so as to make the line covered by the two franchises in effect one line for the collection of a single five-cent fare; and that, in accordance therewith, at the terminus of the line as mentioned in the franchise of September 6, 1899, a transfer point had been established so that passengers could

be transferred from the northern route to the southern route, taking the benefit of both routes for a single fare of five cents.

The several motions to vacate the temporary injunction were granted, and such proceedings were thereafter had that the orders accordingly entered were brought to this court on appeal for review, and the temporary injunction was continued pending such appeal.

For the appellant there was a brief by *Miller, Noyes & Miller,* and oral argument by *Geo. H. Noyes.* They argued, among other things, that equitable jurisdiction can be invoked to protect a franchise or other valuable right as against those who deny such franchise or right or who seek to injure or destroy it. *Milwaukee E. R. & L. Co. v. Milwaukee,* 95 Wis. 39; *Fox River F. & P. Co. v. Kelley,* 70 Wis. 287; *Grand Rapids W. P. Co. v. Bensley,* 75 Wis. 399; *Kaukauna W. P. Co. v. Green Bay & M. C. Co.* 75 Wis. 385; *Mobile v. L. & N. R. Co.* 84 Ala. 115; *Croton T. P. Co. v. Ryder,* 1 Johns. Ch. 611; *Burlington v. Schwarzman,* 52 Conn. 181; *Keystone B. Co. v. Summers,* 13 W. Va. 476; *Williams v. Citizens' R. Co.* 130 Ind. 71. As to the rights of railway companies and the proper course to be pursued by passengers when disputes like this arise, see *Yorton v. M., L. S. & W. R. Co.* 54 Wis. 234; *S. C.* 62 Wis. 367; *Ellis v. Milwaukee City R. Co.* 67 Wis. 135; *Chicago, B. & Q. R. Co. v. Griffin,* 68 Ill. 499; *Hall v. M. & C. R. Co.* 15 Fed. Rep. 57; *Hufford v. G. R. & I. R. Co.* 53 Mich. 118; *Bradshaw v. South Boston R. Co.* 135 Mass. 407; *Lake Shore & M. S. R. Co. v. Pierce,* 47 Mich. 277. Jurisdiction in equity will be sustained when time, expense, and a multiplicity of suits will be saved by it and the rights of all concerned will be settled in one litigation. *Gullickson v. Madsen,* 87 Wis. 19; *Fox River F. & P. Co. v. Kelley,* 70 Wis. 287; 1 Pomeroy, Eq. Jur. § 245 *et seq.; Third Ave. R. Co. v. New York,* 54 N. Y. 159; *Norfolk & N. B. H. Co. v. Ar-*

*nold*, 143 N. Y. 265; *De Forest v. Thompson*, 40 Fed. Rep. 375; *Osborne v. Wis. Cent. R. Co.* 43 Fed. Rep. 824; *Sang Lung v. Jackson*, 85 Fed. Rep. 502. The principle that a bill in equity will lie to prevent a multiplicity of suits applies as well to proceedings of a criminal nature. *Mayor v. Pilkinton*, 9 Mod. 273; *Louisiana S. L. Co. v. Fitzpatrick*, 3 Woods, 222; *Shinkle v. Covington*, 83 Ky. 420; *Atlanta v. Gate City G. L. Co.* 71 Ga. 106; *Spink v. Francis*, 19 Fed. Rep. 670; *S. C.* 20 Fed. Rep. 567; *Klein v. Livingston Club*, 177 Pa. St. 224; *Vegelahn v. Gunther*, 167 Mass. 92; *Mobile v. L. & N. R. Co.* 84 Ala. 115; *Forcheimer & Co. v. Mobile*, 84 Ala. 126; *Montgomery v. L. & N. R. Co.* 84 Ala. 127.

For the respondents there was a brief by *Wheeler & Perry*, attorneys for *Bradley, Story, Perry, Wheeler, Laflin, Morse*, and *Gregg;* a brief by *Turner, Pease & Turner*, attorneys for *Tompkins, Landolt*, and *Wright;* and a brief by *Nickerson, Roemer & Aarons*, attorneys for *Nethercut;* and the cause was argued orally by *Lynn S. Pease* and *C. B. Perry*.


MARSHALL, J. A jurisdictional question is presented on facts that do not appear in the foregoing statement. Subd. 3, sec. 3069, Stats. 1898, which in the beginning was sec. 10, ch. 264, Laws of 1860, gives the right of appeal from an order granting, refusing, modifying, or dissolving an injunction. Sec. 3042, Stats. 1898, which in the beginning was part of sec. 9 of said ch. 264, limits the time for taking an appeal from such an order to thirty days from the date of the service by either party to the action upon the adverse party of a copy thereof with a written notice of the entry of the same. Sec. 3061, Stats. 1898, which in the beginning was sec. 19 of said ch. 264, and sec. 2, ch. 139, Laws of 1861, provides that when a party shall give immediate notice of appeal from an order dissolving or modifying an injunction he may, within three days thereafter, serve an undertaking on the adverse party, containing certain specified provisions,

executed on his part by at least two sureties, in such sum as the court or presiding judge thereof shall direct, and that thereupon he shall be entitled to an order continuing the injunction. In this case the notice of appeal was not given till nine days after the making of the orders appealed from. Because of that delay respondents' counsel say the requirements of sec. 3061 were not satisfied and therefore this court has not obtained jurisdiction and should dismiss the appeal. Reliance is placed on *Punch v. New Berlin*, 20 Wis. 189, which fully supports counsel's contention. However, the case was wrongly decided, as was very soon discovered. It pretty satisfactorily appears that the motion there to dismiss the appeal was not based on the ground upon which the dismissal took place, but on the fact that the appeal was from a chambers order. We find the case several times cited in the reports on that subject, but not cited in any subsequent opinion rendered to support the proposition that compliance with sec. 3061 is jurisdictional. The court evidently overlooked the fact that the section requiring immediate notice of the appeal has reference mainly to the condition upon which the appellant is entitled to an order continuing the injunction, and that the right of appeal and the termination of that right are governed by other and entirely independent sections. In *Couldren v. Caughey*, 29 Wis. 317, the jurisdictional question was again presented, relying upon *Punch v. New Berlin*, and the motion to dismiss was denied, such case being squarely overruled though without any mention of it in the opinion. The statement made by the reporter in the published report says that the moving party relied upon *Punch v. New Berlin*. One would suppose by reading the opinion that the court was dealing with an original question. That probably accounts for the early case appearing in the various existing tables of cases with no indication of its having been overruled. Attention is called to the later case in the syllabus to the early case in the an-

The Milwaukee Electric Railway & Light Co. vs. Bradley and others.

notated edition of the reports, but not in such a way as to indicate that it was overruled. What has been said sufficiently answers the suggestion that the appeal should be dismissed for want of jurisdiction. *Punch v. New Berlin* is not, but *Couldren v. Caughey* is, the law of this state on the subject considered.

From the statement of facts it will be observed that the legal right of plaintiff to demand the disputed fares, as a condition of travelers' enjoying the benefits of its railway service, turns on the meaning of the ordinance of September 5, 1899. While such ordinance does not in terms cover or in any way refer to that part of the Wells street line west of the westerly limits of the city of Milwaukee and east of the easterly limits of the city of Wauwatosa, the claim is put forth as we understand it, as the justification for defendants' conduct, that the purpose of such ordinance, among other things, was to limit the right of the grantee of the franchise to a single five-cent fare for a continuous trip one way over any part of the entire line in the city and town of Wauwatosa. Proof was made on the motion to dissolve the temporary injunction, as indicated in the statement, that the members of the common council of the city of Wauwatosa so understood the ordinance when it was adopted, and that the officers of the plaintiff had a far different understanding and one entirely consistent with the regulation for the collection of fares, of which defendants complain. Obviously, neither the understanding upon the one side nor that upon the other, independent of the intent of the parties to the ordinance as disclosed by it and the acceptance thereof, in the light of such circumstances as may properly be resorted to in aid of a judicial construction of the papers, if they need such construction, can have any bearing upon the rights of the litigants in this case. Plaintiff's rights and those of the public as well must be measured by the franchises under which the railroad is maintained and operated.

Upon the face of the ordinance of September 5th, there is no warrant that we can discover for defendants' position that it limits or refers in any way to plaintiff's rights as to charges for service on that part of its line east of the city of Wauwatosa. It limits the fares that may be charged for that part of the line west of the easterly limits of said city, and no claim is made that the ordinance in that regard has been violated. In fact it appears that plaintiff's officers have construed the ordinance so as to make that part of the line covered by it and the entire northern line, covered by the ordinance of May 11, 1891, a single line, entitling a person to a trip one way over the whole or any part of it for a single fare of five cents. So, if defendants' contention be correct, that the ordinance limits the fare to five cents for a trip one way over the whole or any part of the Wells street line west of Thirty-Sixth street, that result must be reached by broadening out the letter thereof by judicial construction.

We do not intend at this time to decide the case on its merits; but in order to apply correct principles to the question of whether the trial court exercised sound judicial discretion, or any discretion at all, in dissolving the temporary injunction, we must look into the merits of the case, as disclosed by the record, sufficiently to see whether the right claimed by plaintiff may probably be vindicated by the final decree in the case. It is considered that enough has been said to make such probability apparent and to bring out clearly that only disputed questions of law are involved.

It follows from the preceding that there was presented, on the motions to vacate the temporary injunction, this situation: The right of plaintiff to collect the disputed fares depended upon questions of law arising on undisputed facts. It was engaged in *quasi*-public work that could not be disturbed by daily contests with patrons over its right to the fares demanded, without great and irreparable injury to its interests if it was acting in the right, and great prejudice

to the traveling public desiring the benefit of its service, as well.  There was no way for plaintiff to avoid such disturbances pending a judicial determination of the controversy, nor to avoid being harassed with a multitude of suits, civil and criminal, which were entirely useless as regards reaching such determination, except either by an appeal to a court of equity for protection or to temporarily surrender what it believed to be its rights.  To avoid the mischief by submission, or to allow the disturbances to continue, could not fail to result in irreparable damage to plaintiff.  No proposition was made to protect plaintiff from loss by a bond; no requirement to that effect was made by the trial court as a condition of dissolving the injunction, and the situation was such that there was no practical way of protecting plaintiff against probable loss by that means.  The damages that might probably result to defendants by reason of the injunction, in case plaintiff finally failed in the litigation, were trifling and easily indemnified against by a bond on its part given as a condition of the injunction; and the defendants were so protected.  The primary right sought to be established was the right to a permanent injunction restraining defendants from doing the things in respect to which their liberty was restrained by the temporary injunction.  In such situation the trial court dissolved the injunction unconditionally, leaving plaintiff the alternatives of temporarily surrendering what it believed to be its legal rights and suffering the irreparable loss reasonably certain to follow, or suffering as great or still greater loss by continuing the daily contest with defendants over the subject of fares by reason of its endeavors to enforce its regulations; or of appealing to this court with an interim continuance of the temporary injunction.  It chose the latter.

Did the trial court do right under the circumstances stated?  That inquiry leads to this other: Why does power in equity exist to control situations pending litigation in re-

gard to the rights involved? The answer to that may be found written in the judicial records of every court and the works of every standard text writer, to the effect that the power is given to be exercised so as to promote the ends of justice. It is a broad discretionary power, essential to a proper administration of justice, and to be used with judgment and consideration for the interests of both parties, and with good common sense, to the end that irreparable loss and useless litigation may be prevented, so far as that can justly be done in advance of a final determination of the rights of the parties.

We are told that the reason for dissolving the temporary injunction in this case is because defendants, by their answers, denied all the equities of the complaint, and the trial court understood that in such a case a temporary injunction, granted before answer, should be dissolved. If that were an absolute rule it would result in a mere denial of the equities of the plaintiff's complaint, regardless of the probability yet remaining of his recovering in the litigation, displacing the discretionary power of the court to protect the plaintiff from the conduct of his adversary pending the litigation. That would be absurd. The general rule is as stated; but courts should not be misled into thinking that it is the universal rule. The idea that a denial by answer of all the equities of the complaint entitles the defendant, as a matter of right, to a dissolution of a temporary injunction, is unsound, though there are so many unguarded judicial expressions in legal opinions, well calculated to induce a contrary view unless one keeps well in mind the underlying principles of equity power in such situations, that it is not strange that courts sometimes act upon the erroneous theory that a denial of all the equities of the complaint displaces judicial discretion. Such principle recognizes that the judicial power to act by temporary injunction is designed to be used in aid of judicial administration in equity, and that it should be

exercised to that end in the sound discretion of the court or judge. The general rule always gives way when the circumstances are such as to require it, rather than that a litigant shall be subjected to serious danger of suffering irreparable loss. That was really the old chancery rule, and our statute (sec. 2774, Stats. 1898), in expressly conferring interim injunctive power on the courts, is supposed to have gone somewhat further than the rule of the old practice. It provides that, "when it shall appear by the complaint that the plaintiff is entitled to the judgment demanded, and such judgment, or any part thereof, consists in restraining the commission or continuance of some act the commission or continuance of which, during the litigation, would produce injury to the plaintiff; or when, during the litigation, it shall appear that the defendant is doing, or threatens, or is about to do, or is procuring or suffering some act to be done in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual, a temporary injunction may be granted to restrain such act." In *Trustees German Evangelical Congregation v. Hoessli*, 13 Wis. 348, it was remarked that such section "seems to enlarge the former chancery power over the remedy by injunction." So if there has been ingrafted upon the old equity rule in recent years exceptions not formerly known, which we are not ready to admit, the statute is ample warrant for it.

We reaffirm what was said in *Valley I. W. Mfg. Co. v. Goodrich*, 103 Wis. 436, on this subject: The general rule, so often stated, that on the coming in of the answer denying all the equities of the complaint the temporary injunction should be dissolved, ought to be stated with such qualifications as will preclude an understanding that it is universal, leaving no room to exercise judicial power, regardless of the necessities of the case, except to dissolve the injunction. If such were not the case the court would be

vested with discretionary power, yet be so shackled by an
arbitrary judicial rule as to take from it every element of
discretion. Thus would the arm of equity be paralyzed,
though it is reputed to be long enough, when properly used,
to lay hold of every situation where legal remedies fail, pre-
venting irreparable mischief and remedying wrongs. It is
more accurate and less liable to mislead to state the rule in
regard to dissolving a temporary injunction on the coming
in of an answer with this qualification: Notwithstanding
the conflict between complaint and answer as to the facts
or the law, it is still within the discretionary power of the
court, by a temporary injunction, to preserve the *status quo*
between the parties pending the final decree and to prevent
the doing of the acts complained of during such pendency
if that be necessary to save the plaintiff or the defendant
from irreparable. injury by the conduct of his adversary in
the meantime. Not only does the discretionary power exist
to protect a party against such danger, but the duty exists
to exercise it by making some reasonable provision to pre-
vent such injury. In such cases, necessarily, the court should
proceed with care, neither arbitrarily refusing to grant or
continue an injunction, nor the reverse. The situation of
the respective parties should receive careful consideration.
If restraint upon the defendant will not subject him to
danger of any serious loss and he can be amply secured
against that danger by a bond, and without such restraint
the plaintiff will be in danger of suffering serious loss that
cannot be adequately guarded against by a bond, good judg-
ment may require such restraint with proper conditions. In
other situations, a wise administration may demand a differ-
ent course; but whatever the situation may be, it is in the
power of a court of equity to so shape its administration as
to reduce the danger of a miscarriage of justice as low as
human foresight can do it. A failure to exercise judicial
power to protect litigants so far as practicable from probable

loss, upon the theory that there is some arbitrary rule that displaces such power under certain circumstances, is error, and an unreasonable exercise of such power by refusing temporary restraint, where there is a clear necessity therefor, is an abuse of such power.

It seems that if the first error mentioned did not lead to the orders appealed from the other did. The temporary injunction should have been allowed to stand to the extent necessary to prevent useless litigation and a continuance of the conditions complained of pending the trial of this case. Notwithstanding all the equities of the complaint were denied, no serious loss to defendants in any event was probable, and the reverse was true as to plaintiff. If authorities were needed to this, the following amply sustain all that has been said: *Valley I. W. Mfg. Co. v. Goodrick,* 103 Wis. 436; Beach, Injunctions, § 307; *Hicks v. Compton,* 18 Cal. 206; 10 Ency. of Pl. & Pr. 1029; *Bowen v. Haskins,* 45 Miss. 183; High, Injunctions, § 1491; *Clum v. Brewer,* 2 Curt. 506; *Morris C. & B. Co. v. Matthiesen,* 17 N. J. Eq. 385.

In the foregoing we have considered only the action of the court in unconditionally vacating the temporary injunction. The conclusion reached does not go to the extent of holding that the injunction, in its entire scope, was proper. On the case made by the record presented on the motions to dissolve the injunction it would have been proper to have modified the injunction in one particular at least. That subject need not necessarily be considered here, though it is deemed proper to indicate the views of the court in aid of further proceedings that may be had.

Respondents' counsel say it is an established principle of equity jurisprudence that the jurisdiction of equity does not extend to barring the privilege of a person to vindicate his legal rights at law. That is a general but by no means universal rule. There are many exceptions to it, sufficient to meet all situations where wrongs cannot be adequately pre-

vented or redressed otherwise than by putting restraint upon the liberty of the person to use legal remedies. The case upon which respondents' counsel chiefly rely (*Third Ave. R. Co. v. New York*, 54 N. Y. 159) amply shows the limitation of the rule. It is there said, in substance, that 'the jurisdiction of a court of equity to prevent by injunction a multiplicity of suits is unquestionable and it may well be exercised for temporary restraint where there are a large number of actions pending, instituted by the same person in different courts to vindicate the same right, so as to prevent the prosecution of all but one of such actions.' Equity jurisprudence goes as far as reason will permit, under the circumstances of each particular case, to discountenance useless litigation and prevent irreparable injury. With that familiar principle in view one need not feel bound in every case to test the right of a person to proceed by injunction, by precedents. If the case falls clearly within the principle, there is no room to doubt the jurisdiction. In the case to which we have referred the opinion closes with language which quite well fits this case except for the scope of the injunction here granted: "The prosecution of all the suits referred to in the complaint at one and the same time would be unnecessarily oppressive by having costs incurred which it is said in the complaint would be 'onerous and oppressive;' and the case is one, under all the facts disclosed, where the interference of a court of equity was properly invoked and exercised."

It is particularly insisted by respondents' counsel that the court should not have restrained the proceedings in the criminal actions. Here again a general principle is invoked,— the rule that equity will not interfere by injunction to prevent the exercise by courts of their criminal jurisdiction, nor to prevent the commission of crime,— without recognizing the exceptions, which are as well defined in the books as the rule itself, that such rule does not apply

The Milwaukee Electric Railway & Light Co. vs. Bradley and others.

where the ends of justice require restraint upon the liberty of a person to commit minor offenses or to institute criminal prosecutions therefor as a means of invading and violating property or civil rights, thereby preventing the legitimate enjoyment thereof. High, Injunctions, § 68; *Atlanta v. Gate City Gas L. Co.* 71 Ga. 106; *O'Brien v. Harris,* 105 Ga. 732; *Casey v. Cincinnati T. Union,* 45 Fed. Rep. 135; *Cœur d'Alene C. & M. Co. v. Miners' Union,* 51 Fed. Rep. 260; *Toledo, A. A. & N. M. R. Co. v. Pennsylvania Co.* 54 Fed. Rep. 730, 746. An examination of the cases cited will demonstrate that the jurisdiction of equity is frequently and successfully invoked to prevent misdemeanors and prosecution for such offenses where the commission and the prosecution thereof is resorted to or threatened as a means of preventing the enjoyment of property rights and there is no other way of adequately remedying the mischief, either by way of preventing the damage that might otherwise result or repairing such damage thereafter. We conclude this branch of the case by saying that if the trial court had relieved *Bradley* from incapacity to proceed in the first civil case for damages, leaving full opportunity to test the right of the controversy in that one case, he would have had no good ground for complaint. The other cases did not serve any useful purpose. Their commencement was ill-advised and useless. Assuming that the parties were acting in good faith, one case was as good as a multitude for all practical purposes.

It is insisted on behalf of respondent *Nethercut* that his position is different from that of his associates, because he has never refused to pay the extra fare upon plaintiff's cars; that he has only insisted that the collection of it is illegal; that the only active connection he has had with the controversy involved in this suit, as shown by the record, is to insist publicly and privately that plaintiff is in the wrong. If, when *Nethercut* answered the complaint, he had stood

upon his individual record in the matter instead of joining actively with the other defendants in their defense, there would be strong and perhaps unanswerable reasons for saying that as to him the dissolution of the injunction was proper. When we take his answer as a whole, it clearly appears that he thereby chose to take an active part in the legal contest to maintain the right of his associates to do the things complained of. That being the case, since a continuance of the injunction as to him cannot in any way injure him materially, we see no very good reason why he should be excepted from the restraint put upon his associates till the final termination of the cause. If he shall not be held by the final decree, he will find ample protection for his damages in the bond given for that purpose and the costs which he will recover.

*By the Court.*— The orders appealed from are reversed.

