BARTLETT and others, Appellants, vs. L. BARTLETT & SON Co. and others, Respondents.

*November 13, 1902—February 3, 1903.*

*Equity: Injunctions, when granted as matter of right? Arbitration and award: Jurisdiction: Remedies: Voluntary associations: Discipline of members: Tribunals therefor: Scope of jurisdiction and authority: Review by courts: Boards of trade: Clerks of members: Agency: Unauthorized contract: Evidence.*

1. If by the complaint of the plaintiff there is a probability of a recovery by him, which will be ineffective to vindicate his rights and afford him the full measure of redress which the litigation is competent to furnish unless the defendant, pending its final conclusion, is restrained of his freedom so as to prevent his action prejudicially to the alleged rights of the plaintiff and if without such restraint irreparable damage will accrue to the plaintiff regardless of the final result of the suit, and from such restraint no injury will accrue to the defendant which cannot be adequately guarded against by a bond, it should, as a matter of right, be granted.

2. The award of arbitrators, within the scope of the submission to them, is binding upon the parties concerned. The triors agreed upon are the supreme judges within such scope, not only as to the law but as to the facts, and their decision in respect thereto, however erroneous it may be, tested by abstract principles of right, cannot properly be judicially disturbed.

3. If arbitrators, in reaching a conclusion in respect to a matter before them for decision, go outside of the scope of the submission by disregarding the facts or the rules governing the same, either wilfully or ignorantly, through either good or bad motives, the result will be tainted with jurisdictional error and can be dealt with by the courts at the suit of the injured party if it is prejudicial to his property rights.

4. If arbitrators reach a conclusion by a departure from the scope of the submission, or if, acting therein, they are guilty of mis- - conduct so palpable as not to be reasonably attributable to error of judgment, such conclusion is fatally defective for jurisdictional error.

5. The determination of a disciplinary proceeding by a regularly constituted tribunal of a voluntary association according to its rules is in effect an award of arbitrators, and so long as such proceeding is free from jurisdictional error it is not open to judicial scrutiny. However, like the determination of a *quasi*-judicial body, it is a proper subject for judicial investigation and control as regards jurisdictional error at the suit of any party aggrieved because of an injury to his property rights.

6. In a trial by a tribunal of a voluntary association, of a matter submitted to it under its rules, the laws of the association limit its jurisdiction. The parties immediately interested as disputants stand committed by their relation to the association to abide by whatever result may be reached by the triors within the legitimate field in which they are entitled to go and no further. That includes power to construe the rules of the association as to their jurisdiction and those claimed to have been violated by the member whose conduct is under investigation .when such rules will reasonably admit of two constructions, but not otherwise.

7. Clerks of members of a board of trade being disabled from making contracts within its jurisdiction, binding upon their employers, a contract made in violation thereof, unless ratified by the employer of the offending clerk, is, as regards the jurisdiction of the association, absolutely void. The employer of such clerk, upon being charged before the proper tribunal of the association with having violated its laws, by refusing to be bound by the transaction, is entitled to be exonerated upon its appearing that such transaction was neither authorized nor ratified by him. A finding otherwise, reached by testing the rights and obligations of the parties concerned by a standard not found in the laws of the association, is not binding upon the person aggrieved.

8. A person employed to do mere clerical duties in business transactions, who is prohibited from making contracts for his employer, cannot bind the latter by assuming to have such authority and contracting in the name of his employer with a person having knowledge of the scope of his employment, and then passing the void transaction as legitimate in the course of his duties of checking up his employer's trades to avoid mistakes. and giving the customary memoranda evidencing such as may

be found upon such verification to be correct. That principle is so well understood that a decision otherwise by arbitrators cannot be attributed to mere error of judgment.

[Syllabus by Marshall, J.]

Winslow and Dodge, JJ., dissent.

Appeal from an order of the circuit court for Milwaukee county: Warren D. Tarrant, Circuit Judge. *Reversed.*

Action to enjoin the *Chamber of Commerce* of the City of Milwaukee from expelling or suspending plaintiffs from the chamber for an alleged violation of its rules of organization.

The following facts were set forth in the complaint by appropriate allegations: Since more than one year prior to January 2, 1902, plaintiffs have been partners in business as Bartlett, Frazier & Co., except that during such period, prior to the date mentioned, plaintiff *Pierce* was taken into the firm. The business of the firm has been and is that of dealers in grain and other products and property, and public warehousemen of grain. The members of the firm, except *Pierce,* are members of the defendant *Chamber of Commerce* in good standing, and have been such since prior to November 29, 1901. Their business is extensive and profitable. On November 29, 1901, defendant *L. Bartlett & Son Company* was and since has been a duly organized corporation and a member of said chamber in good standing. Such *Chamber of Commerce* is a corporation, duly organized under the laws of this state. By force of its by-laws, all controversies between its members, of the nature of the one hereafter mentioned between plaintiffs and *L. Bartlett & Son Company,* are required to be submitted by the parties thereto, for settlement, to arbitration, with the right of appeal to a board of appeals of the chamber.

The following are among the by-laws of the corporation:

"If it shall be charged that any member of the association has failed to comply promptly with any contract, either verbal or written, has neglected or refused to comply promptly with the award of any board of arbitration or board of appeals,

rendered in conformity with the rules and regulations of the association; or has refused or neglected to submit any matter of difference to arbitration, it shall be the duty of the board of directors, upon the complaint in writing of the aggrieved party, to consider the matter at any regular, adjourned or special meeting of said board, of which meeting the accuser and the accused shall have had at least six days' notice in writing to attend; and if by a majority vote of the directors present—there being at least six votes in the affirmative—the charges made shall be decided to be sustained, the member in fault shall, by such finding, stand suspended from all privileges of membership until the matter complained of shall have been satisfactorily settled in the judgment of the board of directors. Should, however, the gravity of the offense be deemed such as to merit expulsion, the member in fault may, by a majority of two-thirds of the directors present—there being not less than six votes in the affirmative—be expelled from the association. Any member of the association suspended under the provisions of these rules shall stand suspended until he shall have complied with and performed such further conditions of reinstatement, in addition to those herein provided, as the board of directors may, in its judgment, see fit to impose."

"The duty of the board of arbitration shall be to investigate and decide all disputes and difficulties of a financial and commercial character which may be submitted to it. The statements of the principals and witnesses in each case shall be under oath and be recorded."

"The decisions of the board of arbitration may be appealed from, and the case carried to the board of appeals for its revision, within three business days after a copy of the award of the former committee shall have been delivered to the parties concerned, and by notice of such appeal being given to the secretary; and the secretary shall immediately notify the opposite party of such appeal."

"It shall be the duty of the board of appeals to review such cases as may be appealed from the board of arbitration and formally brought before it; and its decision shall be final and binding upon the parties. The board shall, however, before its decision, receive, under oath, such new evidence as may be offered, and if, in its judgment, evidence is produced which will justify a rehearing of the case by the board of ar-

bitration, it shall remand the case to the said board of arbitration for a new trial. Any final award or finding of the board of appeals shall be based on the record of the board of arbitration, and shall be rendered in the same manner as the awards of the board of arbitration."

Prior to September 18, 1891, clerks of members of the chamber were authorized to do business in the exchange room for their employers, but not for themselves or any other person, firm or corporation. On such day the rule on the subject was amended to read as follows:

"Any person holding a clerk's ticket shall have the right of entrance to the exchange room, but shall not have the right to transact any business for his employer, himself or any other person, firm or corporation. Any clerk's ticket and the payment therefor may be declared forfeited by the board of directors upon satisfactory evidence that the holder of the same has violated any of the privileges granted by it."

The rule as so amended has been, since the date mentioned, enforced. November 29, 1901, Walter E. Brown was a clerk for plaintiffs, entitled to be admitted as such to the floor of the exchange, but without authority to do anything in violation of such rule. *L. Bartlett & Son Company,* on such date, with knowledge of Brown's disability under the rules of the chamber, to make trades within its jurisdiction, recognized him as having authority to do so by purchasing, ostensibly of him as agent of plaintiffs, the privilege of calling on them to sell to said *L. Bartlett & Son Company,* at any time prior to the close of business of the chamber regularly held on the floor of the exchange, December 7, 1901, 50,000 bushels of wheat, contract grade, for delivery in May of the year 1902, and upon the next day caused Brown, as clerk for plaintiffs, to check up said transaction as that of plaintiffs and exchange with it memoranda thereof. Plaintiffs repudiated such transaction as soon as they were informed thereof. With a view to having the controversy as to whether such transaction was binding upon plaintiffs settled in the manner required by the rules of the chamber, December 13,

1901, *L. Bartlett & Son Company* duly lodged a complaint in writing against them, with the secretary of the chamber, setting forth the making of the trade, with all the particulars thereof, and alleging that on the morning thereafter, according to custom in conducting business on the floor of the exchange, Brown, whom plaintiffs had for a long time intrusted with the work of checking up their trades and giving memoranda thereof and paying and receiving money in respect thereto in the usual way, checked up the disputed trade, gave the customary memorandum thereof, made out by him with plaintiffs' initials thereon, and received from the corporation the value of the privilege, $62.50; that December 7, 1901, the corporation demanded to exercise its privilege in the customary way; that plaintiffs refused to recognize its right in the matter by selling to it the grain called for; that thereupon it liquidated its damages for plaintiffs' breach of contract, at $1,843.45, by buying in the open market on the floor of the exchange, in the usual way, the amount of May wheat it was privileged to purchase of plaintiffs. On such showing *L. Bartlett & Son Company* asked the board of arbitrators of the chamber to award it, against plaintiffs, the said sum of $1,843.45. To that complaint plaintiffs answered under the rules of the chamber, setting forth the facts before detailed as to Brown's want of authority and their prompt repudiation of his violation of the rules of the chamber. The arbitrators decided, upon evidence submitted for their consideration, that plaintiffs never authorized or ratified Brown's act in attempting to make a trade for them; that the money received by him from *L. Bartlett & Son Company* never came to their hands, but was dishonestly retained by him; that he was under disability to bind them in the matter under the rules of the chamber; that it was outside the scope of his employment; that he had no actual authority to make the trade, and that his legitimate duties as clerk for them gave him no apparent authority to do so. The complaint was therefore dismissed.

.The complainant appealed to the board of appeals, which, wholly on the record of the proceedings before the arbitrators, decided that if the trade in question as originally made was void, Brown's act in checking up the transaction and delivering the memorandum thereof to *L. Bartlett & Son Company,* according to the usual custom, ratified the transaction, and that complainant was entitled to recover the full amount of damages claimed, $1,843.45, and $81, cost of the arbitration proceedings. In making such decision the board of appeals wilfully violated the rules disabling clerks of members of the chamber from making trades within its jurisdiction, for their employers, and in so doing exceeded its jurisdiction and committed an inexcusable mistake of law. Plaintiffs have refused to abide by such award solely upon the ground that it is void for the jurisdictional error aforesaid. By reason thereof *L. Bartlett & Son Company* have instituted proceedings under the rules of the chamber to have plaintiffs punished by exclusion or suspension from such chamber unless they comply with the award; and if not restrained by the court the purpose of such proceedings will be consummated. Plaintiffs' business is of such a character that if their status as members of the chamber in good standing is disturbed as threatened, they will be greatly and irreparably damaged, and their damages will be of such a character that the same cannot be estimated and measured in money. A permanent injunction was prayed for, restraining the chamber from disciplining plaintiffs because of their refusal to abide by the award, and a temporary injunction, preserving the existing conditions of things pending litigation, was requested.

*L. Bartlett & Son Company* answered, setting forth the facts heretofore detailed respecting the transaction between it and Brown, and alleged that he was, at the time thereof, authorized and empowered, and held out to the world as entitled, to make for them such trades as the one in question; that he had been accustomed to do business of that kind

openly and to their knowledge before the amendment of the rules mentioned in the complaint, and that his authority to continue as before was not thereafter revoked by any act on the part of plaintiffs. The answer set forth the facts relating to the trial of the controversy, respecting plaintiffs' liability under the rules of the chamber and the result thereof as heretofore detailed, and alleged that all the questions raised by the complaint, including the effect of the rule of the chamber as to clerks doing business for their employers, as regards whether it merely renders a clerk violating it liable to punishment, or, in addition, renders the trade made by him void, were submitted to the arbitrators and board of appeals and were irrevocably closed by the final decision. The answer further set forth the rules of the chamber showing, among other things, that if the award of the board of appeals is valid, the board of directors has no discretion as to whether plaintiffs should be disciplined for their refusal to abide thereby. It also set forth the evidence taken by the arbitrators. Such evidence is to the effect, in part, that it was one of Brown's regular duties to check up his employers' trades and deliver the customary memoranda thereof and receive money thereon; that prior to the amendment of the rule disabling clerks of members of the chamber from making trades for their employers, Brown had made trades upon the floor of the exchange for plaintiffs, and without any objection from them; that they had ratified such trades. There was further evidence showing that Brown made one trade after the amendment of the rules, which plaintiffs recognized, feeling honorably bound to do so, but that it was not a trade within the jurisdiction of the chamber. There was evidence tending to show that plaintiffs kept Brown in their employ after they knew that he was not reliable, and that they had such knowledge, before the transaction in question. The evidence on the part of the plaintiffs was unequivocal that they never authorized Brown to make any trade for them in violation of the

rule disabling him from doing such business, and that they never recognized or ratified any violation of the rule by him as binding upon them.

The defendant *Chamber of Commerce* and other defendants joined in an answer, setting forth, among other things, that in the proceedings before the arbitrators and before the board of appeals, the following questions were submitted for decision: Was Walter E. Brown authorized by Bartlett, Frazier & Co. to make the trade in question with *L. Bartlett & Son Company,* said Brown being a clerk in the employ of the firm of Bartlett, Frazier & Co.? Did said *Bartlett & Son Company* have a right to assume that Brown had implied authority from Bartlett, Frazier & Co. to make the trade in question? Did Bartlett, Frazier & Co. ratify said trade by the receipt of the consideration, $62.50, and the exchange of written ratifications, and otherwise, notwithstanding the consideration was paid to Brown and the ratification was given in Bartlett, Frazier & Co.'s name by him, it being part of his regular duties, on behalf of plaintiffs, to ratify trades and collect the consideration? Said answer stated the result of the trial before the arbitrators, and of the hearing upon the appeal to the board of appeals, and alleged that all the proceedings in the matter were strictly in accordance with law, and without any wilful or other violation of the rules of the chamber.

There was an affidavit on behalf of Bartlett, Frazier & Co. setting forth, among other things, that Brown, in making the transaction in question, acted without any authority from Bartlett, Frazier & Co., either express or implied, and that in all cases where Brown delivered confirmation cards or memoranda in his capacity as clerk for plaintiffs, in the confirmation of their board trades, such transactions were confined to cases where a previous valid contract had been made with an authorized representative of the firm; that in the common and well-known custom of dealings in the *Chamber*

*of Commerce* of the city of Milwaukee, such work is, as a rule, performed by clerks having no authority to make trades; that such work does not involve a ratification of trades, but simply a checking over of contracts previously made by authorized persons, for the purpose of avoiding errors.

Two motions were made upon the pleadings and the affidavit, to vacate the temporary injunction, one being made by *L. Bartlett & Son Company,* and the other by the *Chamber of Commerce* and its codefendants aside from *L. Bartlett & Son Company.* The motions were granted and plaintiffs appealed.

For the appellants there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* attorneys, and *George P. Merrick* and *Henry S. Robins,* of counsel, and oral argument by *Mr. Merrick, Mr. Robbins* and *Mr. F. C. Winkler.*

For the respondent *L. Bartlett & Son Co.* there was a brief by *Hoyt & Olwell,* and for the respondents the *Chamber of Commerce of Milwaukee* and its directors there was a separate brief by *Miller, Noyes & Miller,* and oral argument by *George P. Miller* and *F. M. Hoyt.* They contended, *inter alia,* that the award of the board of appeals of the *Chamber of Commerce* is conclusive both as to the facts and as to the law, and, even if erroneous, cannot be reviewed by the courts. *Consolidated W. P. Co. v. Nash,* 109 Wis. 490–503; *McCord v. Flynn,* 111 Wis. 78–88; 2 Am. & Eng. Ency. of Law (2d ed.), 778, 786, 787; *Boston W. P. Co. v. Gray,* 6 Met. 131; *Burchell v. Marsh,* 17 How. 344; *Fudicker v. Guardian Mut. L. Ins. Co.* 62 N. Y. 392; *Meldrow v. Norris,* 2 Cal. 74; *Fairchild v. Adams,* 11 Cush. 549, 555; *Smith v. B. & M. R. Co.* 16 Gray, 521; *Cutting v. Stone,* 23 Vt. 571; *Pitcher v. Board of Trade,* 121 Ill. 412, 420; *Ryan v. Cudahy,* 157 Ill. 108; *In re Haebler v. N. Y. Produce Ex.* 149 N. Y. 414; *Sperry's Appeal,* 116 Pa. St. 391; *Woolsey v. I. O. O. F.* 61 Ia. 492; *Osceola Tribe No. 11, I. O. R. M. v. Schmidt,* 57 Md. 98; Angell & Ames, Corp. (11th ed.) § 418; *Belton v.*

*Hatch,* 109 N. Y. 593; *O'Brien v. Grant,* 146 N. Y. 163, 173; The award of the board of appeals was proper. The trade was within the apparent scope of Webster's authority. Mechem, Agency, sec. 223; *Kelly v. Phelps,* 57 Wis. 425; *Barkley v. R. & S. R. Co.* 71 N. Y. 205; *Hatch v. Coddington,* 95 U. S. 48; *Wright v. Herrick,* 128 Mass. 240; *Gilchrist v. Brande,* 58 Wis. 184; *Claflin v. Lenheim,* 66 N. Y. 301; *Zoller v. Jovin,* 48 N. H. 324; *Wilson v. Noonan,* 27 Wis. 598, 608; *Godfrey v. Schneck,* 105 Wis. 568. The appellant is liable on the ground of negligence. Wharton, Negligence, § 238; *Wright v. N. Y. Cent. R. Co.* 25 N. Y. 562; *Davis v. D. & M. R. Co.* 20 Mich. 105; Wood, Master & S. sec. 432.

MARSHALL, J. If the complaint states a good cause of action, there is at least a probability that appellants are entitled to a decree for the relief prayed for. If that should be the final result of the litigation, yet respondent *Chamber of Commerce* be allowed in the meantime to do the mischief threatened, it is reasonably certain that the object of the suit will be in a great measure defeated. A judgment in their favor, if the *status quo* is not preserved pending the litigation, will leave them irreparably injured; while if it is preserved, we are unable to see how any damage of a serious character can accrue to the chamber if it finally prevails,—certainly none that cannot be adequately guarded against by security. In that situation, assuming for the purposes of this point that the complaint states good grounds for relief, appellants are entitled, as a matter of right, upon reasonable terms, to the temporary restraint which was denied them. *Valley I. W. Mfg. Co. v. Goodrick,* 103 Wis. 436, 78 N. W. 1096; *Milwaukee E. R. & L. Co. v. Bradley,* 108 Wis. 467, 84 N. W. 870. So this appeal turns upon the sufficiency of the complaint.

There is little need to spend time discussing the general principles regarding when a court of equity will interfere to

protect a member of a voluntary association from the judgment of its tribunal on a matter submitted to it under its rules. It must be freely conceded that the laws of such an association, within its own sphere of action, so long as they do not violate any public law, written or unwritten, as administered by its tribunal, are supreme. The trial by such a tribunal is, to all intents and purposes, an arbitration, its judgment an award of arbitrators, and the enforcement thereof subject to be enjoined by a court of equity for the same causes that will admit of any other award being so controlled. It may be so enjoined if it manifestly violates private rights, causing loss to a person, if he has no other adequate remedy. Such rights are deemed to be so violated when the tribunal exceeds its jurisdiction either when, intending to decide according to law, it misapprehends the law, or when it prejudicially goes outside the scope of the matters submitted, or is guilty of any other error affecting the result, other than errors of judgment. A disregard by arbitrators of the facts or the rules governing the matter before them either wilfully or ignorantly, from either good or bad motives, or from whatever cause, is jurisdictional; while mere errors of judgment, either upon the law or the facts, do not vitiate an award. These principles were discussed at considerable length in *Consolidated W. P. Co. v. Nash,* 109 Wis. 490, 85 N. W. 485. As there stated, in effect, whether arbitrators proceed on a basis so clearly wrong as to not be attributable to errors of judgment, or depart from the scope of the submission, or. are guilty of any misconduct affecting the result, errors of judgment upon the law or the facts not being deemed misconduct, the result is the same: the award is fatally defective for jurisdictional error.

Applying the foregoing to the complaint before us, the question of whether it states a good cause of action comes down to this: Did the board of appeals of the. respondent *Chamber of Commerce,* in making its award, commit juris-

,dictional error affecting such award, injurious to appellants? Manifestly, the board was bound by the laws of the corporation the same as appellant. The latter, in submitting to its jurisdiction, agreed to be tried by the rules of the chamber, not by any standard of trade ethics which the board might see fit to set up. If the rules were open to construction, it was undoubtedly the province of the board to construe them. If it erred in judgment in doing so, appellants stipulated in advance to submit thereto. If the rules by which appellants' rights were to be tested were not open to construction because not reasonably susceptible of more than one meaning, or if, instead of attempting to construe the rules and apply the same to the case in hand, the board ignored them and adjudged appellants' rights upon an entirely false standard— one not found in the rules or the law it attempted to follow— then its award does not embody a decision upon the matter submitted according to the judgment of the board, but it is a mere expression of arbitrary will.

Now the question submitted to the arbitrators was this: Are Bartlett, Frazier & Co. guilty of having offended against the rules of the *Chamber of Commerce* of Milwaukee in that they failed, upon due demand therefor, to comply with an agreement made with *Bartlett & Son Company* November 29, 1901, to, at the option of the holder, at any time before the close of business on the exchange floor of such chamber December 7, 1901, sell to said *Bartlett & Son Company* 50,000 bushels of wheat, contract grade, for time delivery, to the damage of such company, liquidated, in the usual manner in such cases, at $1,843.45, and fail, upon due demand therefor, to pay such sum or any part thereof? There was no pretense that such contract was made unless Bartlett, Frazier & Co. were bound by the assumption of authority on the part of their clerk, Walter E. Brown, to act in their behalf, either in making the verbal agreement with *Bartlett & Son Company* or in subsequently doing the customary clerical work of

checking the same up to avoid mistakes and delivering the usual memorandum evidencing the transaction. Much evidence was taken on the hearing, but none showing that Bartlett, Frazier & Co. personally knew of the transaction in the first instance, or of the so-called confirmation of it, until a long time thereafter, or that they ever, by any act, ratified it, or authorized their clerk to represent them in such matters on any previous occasion, subsequent to the amendment of the rules, prohibiting clerks of members of the *Chamber of Commerce* from making trades. The board decided on that state of the case that appellants did not make any trade with *Bartlett & Son Company* which could be recognized under the rules of the corporation. The question being carried to the board of appeals, it held that *Bartlett & Son Company* was entitled to recover, not because the rule prohibiting clerks of members from doing business for their employers does not void a trade made in violation thereof, but because Brown's treatment of his void act as that of his employer, in performing his legitimate duty of checking up deals, claimed to be binding upon them, and delivering the usual memoranda of the transactions, made such void act valid, the same in all respects as if it were originally that of the appellants, and because, "upon all the evidence complainant should recover damages." Since the evidence referred to, at no point, shows that Bartlett, Frazier & Co. had any connection with the transaction in controversy except through Brown, or that he was recognized by them as having authority either to make or ratify trades which were within the jurisdiction of the chamber, after the rule referred to was adopted, we must conclude that the words, "Upon all the evidence complainant should recover damages," are either merely explanatory of what preceded them, or indicate an arbitrary disposition of the matter in hand. They probably refer solely to the proof showing that Brown, subsequent to the adoption of the rule, was authorized and accustomed to do the usual clerical work

of checking up his employer's trades and delivering the customary memoranda to the other parties to the transactions, and that he performed that duty in respect to the matter in question, and by so doing made his unauthorized trade valid. We cannot escape the conclusion, whichever view is taken, that the decision was reached, not by applying the rules of the chamber to the case, but by ignoring them; that the board proceeded as if there was no certain test by which to determine the rights of appellants; that it was permitted to say what was just without any guide but the notions of its members, and that appellants were bound thereby. It did not disturb the decision of the arbitrators that a trade made by a clerk in the name of his employer is wholly void because of the rule disabling him from doing such business, yet held that a clerk, in performing his appropriate duties can, in an indirect way, avoid the disability. The view is so unreasonable, that the general prohibition against clerks doing business for their employers can be entirely circumvented by the effect of the performance of their legitimate duties, that we conclude that the board did not consider the rule in question, but disposed of the matter in hand on its notions of equity as between the persons interested. In that the board plainly exceeded its jurisdiction. It did not merely commit an error of judgment. It was plainly fenced about by the law of the chamber, and the appellants were as well. It was bound to keep within its enclosure, and, operating there, determine whether appellants had kept within theirs. That was what the latter, as member of the chamber, and by joining in the proceedings as well, were bound to submit to. The board exceeded its jurisdiction as clearly as the arbitrators did in *Consolidated W. P. Co. v. Nash,* 109 Wis. 496, 85 N. W. 485, in adopting an obviously absurd construction of the contract which defined the scope of the submission to them; or in *Ryan v. Cudahy,* 157 Ill. 108, 41 N. E. 760, where the arbitrators, in a trial under the rules of the Chicago Board of Trade, re-

fused to accord to a party to the controversy the privilege of making proofs, which he was expressly entitled to by such rule.

A trial by a tribunal of a board of trade, provided for by its rules, or that of any other voluntary organization, is like one before a board of arbitrators agreed upon by parties to the controversy submitted to them. Its scope is limited by the rules of the organization. A violation thereof is jurisdictional error which will vitiate the result; and if private rights of a contestant are injuriously affected thereby, a court of equity can afford relief. Such is the effect of the decision in *Ryan v. Cudahy, supra.* It merely follows elementary principles. We venture to say that the rule is universal that if a board of arbitrators exceeds its jurisdiction to the injury of property rights of any party to the proceedings before it, and there is no other way of reaching the matter, a court of equity will take jurisdiction to afford such relief as it is capable of.

We do not deem it necessary or advisable to support the principles above referred to by citing authorities to any considerable extent. They are deemed to be elementary. The jurisdiction of arbitrators is absolutely and strictly limited by the contract of submission, whether such contract be one formally entered into between the parties or be implied from their being members of a voluntary organization which by its rules requires them to submit their differences to the particular tribunal. The jurisdiction of the arbitrators cannot be extended beyond the contract of submission by their decision upon any jurisdictional question. When the submission requires the matters to be determined to be tested by a particular rule, whether it be a rule of law or a rule of the corporation or association, the adoption by the arbitrators of a different rule or a disregard of the rule and decision of the matter according to the notions of the arbitrators of what is just in the premises, is a departure from the submission just the

same as the inclusion in the submission of matters of differ-
ence not involved at all in the particular controversy to be
settled.    3 Cycl. Law & Proc. 674, 675, and cases cited;
Morse, Arb. 182.    Here the question of whether appellants
were guilty of having violated the rules of the chamber de-
pended upon whether clerks of members were disabled by its
rules from making trades for their employers.    That was de-
cided by the arbitrators in appellants' favor.    The board of
appeals, without touching that question, as we have seen, but
applying to the matter before them an idea not found in the
rules of the chamber or the law, or supported by reason—the
idea that a person acting as agent for another may avoid dis-
ability to make a contract for his principal with one having
knowledge of such disability, by ignoring such want of au-
thority and subsequently, without any change in his compe-
tency, ratifying his void act—held that appellants ought to
pay the damages claimed.

The idea is advanced that the board was warranted in
holding appellants liable independent of the rule, because (1)
they held out Brown as worthy of confidence, knowing that he
was otherwise; (2) authority to him to check and approve
accounts necessarily carried with it authority to approve
trades, making them binding whether they were previous to
the approval or not; (3) they had, previous to the transaction
in question, recognized his trades.    What we have said really
covers all those suggestions.    If it be admitted that appellants
kept Brown in their employ after they had knowledge that he
was not reliable, that did not affect his disability under the
rule of the chamber, as to dealing with those who had full
knowledge of his disability.    As to the second proposition, we
say that to hold that authority to check and approve trades is
consistent with the decision that the rule created absolute
disability of the clerk to make the trade was the adoption of a
principle wholly inconsistent with the one the submission re-

quired the board to try appellants by. As to the last proposition, this seems to be conclusive: There is no evidence showing that appellants, after the disability of the clerk was created by the rule, recognized any contracts made by him that were within the jurisdiction of the chamber. A decision to the contrary without any evidence whatever to support it is jurisdictional error.

From what has been said the conclusion must follow that the complaint states a good cause of action. It sets forth, by appropriate allegations, that a controversy between appellants and *Bartlett & Son Company,* which was within the jurisdiction of the tribunals of the *Chamber of Commerce* of the City of Milwaukee to determine, was tried before such tribunals; that the award was against appellants; that the result was reached by the highest authority in the chamber having jurisdiction of the subject; that it exceeded its jurisdiction in the matter by ignoring the rule vital to appellants' rights; that the decision, if allowed to be carried out, will seriously affect their property rights; that it will be carried out unless the court intervenes and prevents the same; and that appellants have no other way of protecting themselves from the threatened injury except by an appeal to the equity jurisdiction of the court.

It must be understood that this decision does not invade in the slightest degree the familiar doctrine that the determinations of the regularly constituted tribunals of a voluntary association, regularly made, on a subject within their jurisdiction, are not open to judicial scrutiny. The court, however, may look into the proceedings of such a tribunal to the extent of seeing whether, to the injury of the complainant, it exceeded its jurisdiction, the same as in case of a *quasi*-judicial body.

The result of the foregoing is that we must hold that the order vacating the temporary injunction is erroneous and

must be reversed, and the cause be remanded for further proceedings according to law.

*By the Court.*—So ordered.

Bardeen, J. I concur in the foregoing opinion.

Winslow and Dodge, JJ., dissent.