CITY OF MILWAUKEE, Respondent, vs. GIMBEL BROTHERS and others, Appellants.

*November 7—December 4, 1906.*

*Preliminary injunction: Continuance* pendente lite: *Discretion: Municipal corporations: Control over navigable highways: Right to maintain action to abate obstructions: Navigable waters: Harbors: Regulation by federal statutes: Effect on state control: Application for injunction: Issues raised by answer: Effect: Obstructions in navigable waters by assent of public authority.*

1. A city, under its charter authority, established a permanent dock line along a navigable river. Prior thereto piles had been driven so as to form a structure or dock platform extending into the river eleven feet beyond such dock line. This structure had not been interfered with by the public authorities, either federal, state, or municipal, for upwards of forty years. Owners of property abutting on this dock line were proposing to erect an addition to their building, extending substantially over the eleven feet beyond the established dock line, when the municipal authorities brought an action to enjoin them from erecting the proposed building, from placing obstructions in the eleven-foot space, and to compel the removal therefrom of piles and other obstructions placed by them. A temporary injunction was granted *ex parte,* which on hearing was made permanent *pendente lite. Held,* that it was an exercise of a wise judicial discretion to maintain the existing conditions by a properly guarded restraining order.

2. A municipal corporation may maintain a suit in equity to prevent encroachment upon or obstruction of highways by land or water under its care and charge.

3. The federal statutes regulating all harbors used in interstate commerce are merely restrictive of certain acts, and do not exclude states from prohibiting other acts within their borders as deemed necessary for public welfare and safety.

4. In an action by a municipal corporation to restrain the obstruction of a navigable highway, the complaint alleged that all structures at the place in question, ancient or in progress, obstructed navigation and were within the limits of the river. *Held,* that denials thereof, in answer and affidavits presented on a motion to dissolve a temporary injunction, only served to raise an issue on that subject, and did not warrant the reversal of an order making the temporary injunction permanent *pendente lite.*

5. The fact that the public authorities permit in a navigable river a structure in some degree interfering with navigation does not work a surrender of its authority to prevent other structures. even on the same spot.

APPEAL from an order of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

Within the city of *Milwaukee,* Grand avenue, running east and west, reaches the Milwaukee river on its west bank. The defendants *Gimbel Brothers* occupied, under lease, a parcel of land on the south side of Grand avenue, bounded on the east by the Milwaukee river and on the west by West Water street, upon which, in 1906, there stood a building extending from West Water street eastward. As early as 1863 the city of *Milwaukee* had enacted an ordinance establishing a permanent dock line on the west shore of the Milwaukee river, which, on Grand avenue, was 157 feet east of the east line on West Water street, which ordinance is still in force, if valid. The east line of defendants *Gimbel Brothers'* building was some five feet west of this established dock line. Prior to 1863 piles had been driven so as to form a structure or dock platform extending some eleven feet still further east than the established dock line, which structure had never been interfered with by the public authorities, either federal, state, or municipal. Neither of these lines is shown to have had any relation to the actual shore or bank of the river in a state of nature. Defendants *Gimbel Brothers* had prepared plans and were proceeding to erect a building as an addition to the existing one, extending substantially to the line of the existing dock and approximately eleven feet beyond the established dock line. The charter of the city of *Milwaukee* empowered the common council to establish dock lines and "to restrain and prevent encroachments upon said rivers and canals and obstructions thereto." This action was commenced to enjoin the defendants *Gimbel Brothers* from proceeding with the erection of the proposed building and from driving

piles and placing obstructions in the river to the east of the
established dock line, and to require them to remove and take
away piles and all other obstructions already placed by them.
The other defendants than *Gimbel Brothers* were the several
contractors who had been employed by them to do the work,
and some of whom had already driven piles eastward of the
established dock line. Upon the verified complaint a tempo-
rary restraining order was made, *ex parte,* against further
driving of piles and placing obstructions or doing any other
work east of the established dock line, which was accompa-
nied by an order to show cause why such restraint should not
be made permanent during the pendency of the action. This
was opposed upon verified answer and affidavits asserting that
the old dock had been located with the consent and acquies-
cence of the city, and that all land west of it had been occu-
pied adversely, notoriously, and exclusively by *Gimbel Broth-
ers* and their predecessors in title since prior to 1863, and de-
nying that any such space had ever been navigable water or
used as such, and they alleged that they had no purpose to
drive any piles or do any work to the east of the existing dock
structure. Upon this showing the court made order continu-
ing the restraint pending the action, from which order all the
defendants appeal.

For the appellants there was a brief by *Winkler, Flanders,
Smith, Bottum & Fawsett,* and oral argument by *F. C. Wink-
ler.* They contended, *inter alia,* that the city of *Milwaukee*
had not jurisdiction over the subject matter of the suit. 17
Am. & Eng. Ency. of Law (2d ed.) 58, 59; 21 id. 432, 433;
26 U. S. Stats. at Large, 426, 454; *U. S. v. Bellingham Bay
B. Co.* 176 U. S. 211; *Willamette I. B. Co. v. Hatch,* 125
U. S. 1; *Escanaba Co. v. Chicago,* 107 U. S. 678.

For the respondent there was a brief by *John T. Kelly,*
city attorney, and *Benjamin Poss,* assistant city attorney, and
oral argument by *Mr. Kelly.*

DODGE, J.   In this case the trial court has exercised its discretion to maintain the present *status quo* until the various issues of fact and law can be duly considered and decided. Were this not done, the damage to result from an effective removal of all claimed obstructions in Milwaukee river east of the established dock line would be vastly greater than any ·caused by temporary restraint of the construction of a business building, as alleged to be threatened, and the· result :sought by the action, namely, preventing obstruction of navi:gation, would be rendered impossible.   Under such circum:stances, if there is any reasonable probability, because of fair ·doubt as to either law or fact, that plaintiff may ultimately ·recover, it is the part of wise judicial discretion to maintain the existing conditions by a properly guarded restraining or·der.   *Milwaukee E. R. & L. Co. v. Bradley,* 108 Wis. 467, ·84 N. W. 870; *Quayle v. Bayfield Co.* 114 Wis. 108, 112, :89 N. W. 892; *Barllett v. L. Bartlett & Son Co.* 116 Wis. 450, 460, 93 N. W. 473; *Chain Belt Co. v. Von Spreckelsen,* 117 Wis. 106, 119, 94 N. W. 78.   Maintenance of suit in equity by a municipal corporation to prevent encroachment upon and obstruction of highways by land or water under its care and charge is entirely settled in this state.   *Eau Claire v. Matzke,* 86 Wis. 291, 56 N. W. 874; *Pewaukee v. Savoy,* 103 Wis. 271, 279, 79 N. W. 436; *Wauwatosa v.· Dreutzer,* 116 Wis. 117, 92 N. W. 551.   Hence the probability of recovery is not excluded by reason of the form of action.

As an obstacle to recovery, claimed to be certain and insuperable, it is urged that regulation of all harbors used in interstate commerce has been assumed by the federal government, and that thereby all power of the state over the subject is excluded.   It would be an extreme doctrine that the United States, by anything short of express authorization, could exclude the state from the ordinary police control over the conduct of its citizens or the erection of structures within its limits, but we need consider no such question, for the federal

statutes are merely restrictive of certain acts and, on their face, evince no purpose to exclude the states from prohibiting other acts within their borders as deemed necessary for public welfare and safety. This limited purpose has already been ascribed to the statutes by the ultimate judicial tribunal in *Cummings v. Chicago,* 188 U. S. 410, 23 Sup. Ct. 472, and *Montgomery v. Portland,* 190 U. S. 89, 23 Sup. Ct. 735, which hold that even express consent by federal authority to erect structures within navigable harbors wholly within a state will not abrogate restrictions or prohibitions imposed by the state government, and that the purpose of the federal legislation is merely to supplement and not to exclude that of the several states.

As to other questions involved in the litigation, whether of law or fact, we shall hardly feel justified in declaring any final conclusion in view of the incompleteness with which they are presented by the record and the briefs. We construe the complaint as asserting that all structures, ancient or in progress, east of the established dock line do obstruct navigation of the river and are within its limits. The denials of this claim in answer and affidavits but serve to make an issue, as to which we are unable to say, with sufficient certainty, that the trial court might not have entertained such doubt as to warrant his discretion in the restraint interposed.

Counsel for appellants insist that it conclusively appears that the space between the established dock line and the east line of the proposed building, coincident with the existing dock line, never could have been navigable. We do not quite understand his meaning. If it is that the space never was under water, either practically navigable or capable of being made so, we do not think that fact conclusively appears. Whether that space was originally dry land or was part of the bed of the river, so that the state might prevent illegal occupation thereof and preserve it "forever free," in the words of the Ordinance of 1787, cannot be clearly answered from this

record. If, on the other hand, he means merely that vessels could not navigate that space because of the artificial structures placed there, the assertion is doubtless true, but not necessarily material. If it shall be found that the structure is an unlawful obstruction to the public use of a navigable river, its presence, excluding rightful passage of vessels over that spot, could not make lawful other and more complete obstruction. The fact that the government permits a structure in some degree interfering with navigation does not work a surrender of its authority to prevent other structures even on the same spot. Obviously, a fringe of platform alongside of this harbor in which vessels must pass and turn round, near enough to the water level not to interfere with protruding upper portions of hull or rigging, may less obstruct the use of the harbor than would the wall of a building on the same line. Nor because a party had driven a certain number of piles in a given space would the government be disabled from preventing driving others in the same space, if unlawful, thus making the whole structure more substantial and more difficult of abatement, which, by the way, seems to be one of the objects of the present action, although defendants assume otherwise. The complaint prays that defendants be compelled to remove and take away all piles already driven in the space east of the established dock line and also for general equitable relief, and the resolution under which the city attorney brings the suit directs him to procure the removal of existing obstructions.

We are persuaded that no error is presented by the restraining order pending the ascertainment of the rights of the parties.

*By the Court.*—Order appealed from is affirmed.