WISCONSIN POWER & LIGHT COMPANY, Appellant, v. PUB-
LIC SERVICE COMMISSION, Respondent.

*September 12—October 7, 1958.*

170

172

For the appellant there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *R. J. Sutherland*.

For the respondent Public Service Commission there was a brief by the *Attorney General* and *William E. Torkelson*, chief counsel, and oral argument by *Mr. Torkelson*.

BROADFOOT, J.    The utility made no challenge of the facts either in its brief or oral argument. The circuit court found that the findings of fact by the commission were supported by substantial evidence and we agree with that determination.

The utility advances many arguments to support its contention that the commission had no authority to make the order appealed from. It cites many cases that are alleged to support its arguments. The commission takes issue with each argument advanced and also cites many cases. Each side attempts to show that the cases cited by the other are not applicable.

The arguments of the utility are directed to three main points: (1) That the state itself could not limit the methods the utility employed in the operation of its dam; (2) that the commission had no authority to issue the order appealed from; and (3) that the petitioners who originally brought the matter to the attention of the commission were only

private persons and had no standing or legal capacity to question the manner in which the dam was operated.

The utility's predecessors in interest were authorized by the legislature to construct an 18-foot dam by ch. 189, Laws of 1907, and also by permit from the secretary of war. The utility contends that when the dam was constructed as authorized that constituted a contract between the utility and the state; that its rights thereunder became vested and that the commission order which prevents the utility from making maximum use of the water stored in the dam deprives the utility of its property without due process and without just compensation and impairs the obligation of the contract with the state.

The commission acted under the provisions of sec. 31.02, Stats. That statute authorizes the commission to regulate and control the level and flow of water in all navigable waters of the state. The statute was originally passed in 1915. The utility contends, therefore, that it is not applicable to it as its rights vested by virtue of the legislative action in 1907 followed by construction of the dam by 1914.

Reference to ch. 189, Laws of 1907, shows that the legislature made certain reservations in granting authority to construct and maintain the dam in question. Sec. 5 and a portion of sec. 6 of the 1907 legislative act read as follows:

"Section 5. The power to alter, amend, or repeal this act is hereby reserved.

"Section 6. This act is passed in consideration of, and upon the following expressed conditions: . . .

"3. The water power acquired under and by virtue of this act shall not be operated or its operation suspended pursuant to any contract, agreement, or understanding, expressed or implied, in violation of any law of this state or of the United States."

The circuit court held that these provisions were valid reservations of authority that authorized the state to modify

the original act by later legislation. We agree with that determination.

The utility relies mainly upon language in *Water Power Cases,* 148 Wis. 124, 134 N. W. 330. Those cases were brought to test the validity of ch. 652, Laws of 1911. There an attempt was made to repeal all charters for dams theretofore granted and to require the holders of charters to apply for new ones which were subject to certain conditions, and to induce holders of existing charters to come under the act their properties were declared a nuisance and penalties were imposed if their charters were not surrendered. The situations are entirely different and what was said in that case has no application to the matter before us.

The circuit court further held that the order appealed from did not amount to a taking of property, and cited *United States v. Willow River Power Co.* 324 U. S. 499, 65 Sup. Ct. 761, 89 L. Ed. 1101, and *St. Anthony Falls Water Power Co. v. St. Paul Water Comm.* 168 U. S. 349, 18 Sup. Ct. 157, 43 L. Ed. 497. We agree with that determination.

The utility further contends that the state has no authority under its police power because no question of safety was involved and no showing was made that the manner of operating the dam involved any danger to persons or any hazard to navigation. The police powers of the state rest upon a broader foundation. The commission acted to protect public rights in the navigable waters involved, to promote safety, and to protect property, all of which involve subjects covered by the police power of the state. The circuit court further determined that even at common law the owner of a dam must operate the same in a reasonable manner, which is precisely what is sought by the order appealed from. *Apfelbacher v. State,* 167 Wis. 233, 167 N. W. 244.

Finally, with reference to the authority of the state to act, the utility contends that the dam was constructed and operated under a permit from the federal government and there-

fore the federal government has jurisdiction exclusive of any right of the state to the contrary to regulate the flow of water through the dam. This point was also argued before the circuit court. The record discloses that the federal permit was granted under the Rivers and Harbors Act of 1899 and not under the Federal Power Act, and that the utility apparently has never applied for a license under the latter act. The Wisconsin river is entirely within the state of Wisconsin and there has been no federal directive or regulation that would oust the state from jurisdiction. The circuit court relied upon *Cummings v. Chicago,* 188 U. S. 410, 23 Sup. Ct. 472, 47 L. Ed. 525, *Milwaukee v. Gimbel Bros.* 130 Wis. 31, 110 N. W. 7, and *California Oregon Power Co. v. Superior Court,* 45 Cal. (2d) 858, 291 Pac. (2d) 455. The commission also cites *Montgomery v. Portland,* 190 U. S. 89, 23 Sup. Ct. 735, 47 L. Ed. 965, and *International Bridge Co. v. New York,* 254 U. S. 126, 41 Sup. Ct. 56, 65 L. Ed. 176. From the record we are convinced that the state had authority to act.

As to its second contention that the Public Service Commission is without authority to act, the utility argues that it has a contract with the state, that it represents the state for improving navigation of the river, that the commission is only a fact-finding body and that it has no judicial powers to construe the contract.

Even though we assume that the utility had a binding contract with the state, which we do not, certainly the state could designate one of its agencies to protect its rights thereunder. The main question under this contention is as to the applicability of the provisions of sec. 31.02, Stats., to the utility. The argument that the utility received its authority to construct and operate the dam in 1907 while sec. 31.02 was enacted in 1915 is of no force because of the reservation of authority in ch. 189, Laws of 1907. Although no point thereon was made in the briefs or oral argument it appears

from the record that the original permit to the utility's predecessors in title was to construct and maintain an 18-foot dam. The record discloses that a permit was granted prior to 1923 to raise the height of the dam an additional four feet. The commission found that the utility now maintains a head of 37-plus feet. Although we are not engineers we understand that to mean that the dam is maintained at a height of at least 37 feet above the bed of the river. Just what conditions were imposed by the later permits do not appear. The utility cites sec. 31.13 regulating permits for the raising or enlarging of existing dams. That statute was enacted in 1915 and provided that the commission might grant permission therefor but that such permit shall in no way enlarge, alter, abridge, or nullify property rights, privileges, or obligations as to such dam or the maintenance or operation thereof theretofore acquired or incurred. Those original rights were for the construction and maintenance of an 18-foot dam. The order in question could have no effect upon an 18 or 22-foot dam. However, because the point was not raised we do not make our determination upon that basis, but agree with the circuit court that the reservations in the original act authorized the enactment of sec. 31.02, and that the commission has authority to act thereunder. Sec. 31.02 applies to dams maintained before and after the enactment of the statute. The statute is presumptively binding and the burden was on the utility to establish that its provisions should not be applied in the present case. The utility has not met that burden of proof.

Sec. 31.34, Stats., was first enacted in 1933. That statute provides that every corporation maintaining a dam on any navigable stream shall pass at all times at least 25 per cent of the natural flow of water of such stream except as otherwise provided by law. The utility contends that by the enactment of this statute the legislature established a standard and that the commission has no authority to go further than the

limits fixed by statute. It contends further that if the commission view is taken there is no purpose in continuing sec. 31.34 on the books and no reason for originally enacting it. The record shows that the utility is passing more than 25 per cent of the natural flow of the river through the dam at all times. This contention is refuted by the words of the statute itself. The standard set by the legislature is a minimum of 25 per cent. If the order of the commission had established a flow below the minimum set by the legislature the argument of the utility might have some force.

There is little merit to the final contention. Private persons have an interest in the navigable streams of the state. *Muench v. Public Service Comm.* 261 Wis. 492, 53 N. W. (2d) 514, 55 N. W. (2d) 40. It must also be noted that sec. 4, art. I of the Wisconsin constitution provides that the right to petition the government or any department thereof shall never be abridged. Thus the original petitioners were acting within their constitutional rights when they brought the matter to the attention of the commission. In addition thereto some of the original petitioners were riparian owners of lands located on the river below the dam or had other interests in property there located. The commission was fully justified in conducting the hearing based upon that complaint.

As stated above the facts as found by the commission were not challenged. The circuit court properly determined the conclusions of law submitted, and must be affirmed.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.