REUTER and another, Appellants, v. DEPARTMENT OF NATURAL RESOURCES, Division of Resource Development, Respondent.

*No. 288. Argued June 2, 1969.—Decided June 27, 1969.*
(Also reported in 168 N. W. 2d 860.)

For the appellants there were briefs and oral argument by *Willis J. Zick* of Waukesha.

For the respondent the cause was argued by *Steven M. Schur,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

A brief amicus curiae was filed by *Shea, Hoyt, Greene, Randall & Meissner,* attorneys, and *Ralph J. Ehlinger* of counsel, all of Milwaukee, for the Audubon Wild Land Foundation of Wisconsin, Inc.

ROBERT W. HANSEN, J. This appeal brings with it wide-ranging arguments covering a broad area of legislative public concern—but it involves only a narrow question of judicial interpretation of statutory construction.

The Department of Resource Development was created by ch. 614, Laws of 1965, a comprehensive act to protect the waters of the state, to ". . . serve as the central unit of state government to protect, maintain and improve the quality and management of the waters of the state, ground and surface, public and private." Sec. 144.025, Stats., created by ch. 614, sec. 37, Laws of 1965. Of the problems presented by the fact of water pollution, the legislature stated in sec. 1 of ch. 614, enacted as sec. 144.025 (1), Stats., that "[c]ontinued pollution of the waters of the state has aroused widespread public concern. It endangers public health and threatens the general welfare." The purpose of the act was stated in sec. 1 to be ". . . the enhancement of the quality management

and protection of all waters of the state" urging a ". . . comprehensive action program . . . to protect human life and health, fish and aquatic life, scenic and ecological values and domestic, municipal, recreational, industrial, agricultural and other uses of water." As to regulations concerning water pollution, their purposes are to include ". . . prevent and control water pollution. . ." [1] and "Uses not inherently a source of pollution within an area shall be preferred over uses that are or may be a pollution source," [2] and "Use locations within an area tending to minimize the possibility of pollution shall be preferred over use locations tending to increase that possibility." [3]

Coupling these legislative declarations with the legislature's transferring from the Public Service Commission to the department the function of passing upon applications for permits under sec. 30.20 (2) (c), appellants contend that the "preponderating" factor involved in granting or denying such permits has become the effect or impact upon water pollution. Respondent counters that water pollution is only an "additional" factor to be considered in ruling upon applications for permits of the type here involved.

If the word "preponderating" is defined to mean determinant regardless of other factors legislatively made relevant, it goes too far to be usable here. If the word, "additional" is defined to mean no more than some footnote or added postscript, it falls short of indicating the importance and urgency the legislature has given to pollution as a material factor in granting or denying permits affecting water use. We would summarize the legislative purpose and intent as making adverse effect on water quality and the increasing of water pollution major factors that must be given serious consideration by the

---

[1] Sec. 144.26 (1), Stats.

[2] Sec. 144.26 (5) (a) 2, Stats.

[3] Sec. 144.26 (5) (a) 4, Stats.

department in acting upon requests for permits of the type here involved.

All this is prologue to the exact question raised on this appeal which to us appears to be: Is the department required to make a specific finding as to effect upon water pollution in ruling on a petition for a permit of the type made here? We hold that it is required to do so.

It is true that the statute itself requires only that the issuance of the permit be ". . . consistent with the public interest in the water involved." This term, "public interest," is a very broad term, meaning different things in different connotations.[4]

As to the lakes and streams of this state, it clearly involves the use by the public ". . . for all the incidents of navigable waters . . . sailing, rowing, canoeing, bathing, fishing, hunting, skating, and other public purposes."[5] Polluted waters do become less useful for most, if not all, of such public purposes.

Requiring the department to make a specific finding of fact as to effect of water pollution upon dredging recognizes the importance assigned to pollution by the legislature but leaves to the department the weighing of this factor along with others involved.[6]

---

[4] *Gateway City Transfer Co. v. Public Service Comm.* (1948), 253 Wis. 397, 404, 34 N. W. 2d 238.

[5] *Nekoosa-Edwards Paper Co. v. Railroad Comm.* (1930), 201 Wis. 40, 47, 228 N. W. 144, 229 N. W. 631.

[6] Indicative of other areas of concern to be considered by the department is sec. 144.26 (6), Stats., which provides:

"Within the purposes of sub. (1) the department shall prepare and provide to municipalities general recommended standards and criteria for navigable water protection studies and planning and for navigable water protection regulations and their administration. Such standards and criteria shall give particular attention to safe and healthful conditions for the enjoyment of aquatic recreation; the demands of water traffic, boating and water sports; the capability of the water resource; requirements necessary to assure proper operation of septic tank disposal fields near navigable waters; building setbacks from the water; preservation

Requiring that a specific finding be made assures the parties concerned and affected that the legislatively required consideration of water pollution as a major factor in the decision-reaching process has been complied with. Such specific finding is also a substitute for conjecture and speculation should the department decision be brought to the courts for review.

The legislature has provided for specific findings in hearings of this type.[7] Where the pollution aspect has been given the importance that the legislature has attached to it, we hold that a specific finding covering the pollution aspect of the petition must be made.

Respondent counters that Findings 7 and 10 should be considered adequate to meet any such requirement of a specific finding as to pollution consequences. Finding 7 is: "The shoreline of Lake Beulah at this time consists of marsh area for approximately one fourth of its length." This may support an inference that removal of the bog here involved would still leave considerable marshy areas in existence. But particularly where the department does not dispute that the dredging of bogs and marshy areas may have the effect of increasing the amount of pollution in a body of water,[8] it falls short of a specific finding as to the substantiality of effect upon water pollution of granting the requested permit. Finding 10, in perti-

of shore growth and cover, conservancy uses for low lying lands; shoreland layout for residential and commercial development; suggested regulations and suggestions for the effective administration and enforcement of such regulations."

[7] "Every decision of an agency following a hearing shall be in writing accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise and separate statement of the ultimate conclusions upon each material issue of fact without recital of evidence." Sec. 227.13, Stats.

[8] "Furthermore, the relation of marshes to water quality of a body of water is a relatively elementary ecological fact that would presumably be within the technical expertise of the division even if a lengthy record had not been built in this case." Respondent's brief, p. 17.

nent part, states: ". . . the issuance of this permit will be consistent with the public interest in Lake Beulah." This statutorily required finding as to consistency with the public interest does not, we hold, meet the need for a special finding on the special problem of effect upon water pollution.

Respondent cites the *Hixon Case* [9] as authority for its position that the general "consistent with public policy" finding is enough. In that case this court found sufficient findings that certain fill placed in a navigable lake for which Hixon sought a permit to maintain was a ". . . material obstruction to navigation. . .", did ". . . not allow for the free flow of water thereunder. . ." and was ". . . detrimental to the public interest. . . ." A different statute was there involved, requiring only findings as to obstructing navigation or reducing flood flow plus a finding as to being "detrimental to the public interest." [10] The consequences of a legislative addition of a new factor, to wit: pollution, was not there involved. [11] The *Hixon Case* is on these points distinguishable from the situation we have here.

However, we do not reach the conclusion appellants did, namely, that the absence of a specific finding as to pollution compels the conclusion that the department gave no consideration to the pollution problem. We

[9] *Hixon v. Public Service Comm.* (1966), 32 Wis. 2d 608, 146 N. W. 2d 577.

[10] Sec. 30.12 (2) (a) provides as follows: "The department of resource development may, upon application and after notice and hearing, grant to any riparian owner a permit to build or maintain for his own use a structure otherwise prohibited by statute, provided such structure *does not materially obstruct navigation or reduce the effective flood flow capacity of a stream and is not detrimental to the public interest.*" (Emphasis supplied.)

[11] Effect upon pollution clearly is a "material issue of fact," within the meaning of sec. 227.13, Stats., requiring findings of fact in a department decision to ". . . consist of a concise and *separate statement* of. the ultimate conclusions *upon each material issue of fact* without recital of evidence." (Emphasis supplied.)

stop at the holding that a specific finding of fact is to the effect of granting the permit upon water quality and water pollution is required.

The judgment of the circuit court will be reversed and the case will be remanded to the department for further proceedings consistent with this opinion, including the right of the department to take additional testimony on the effect upon water quality or water pollution of granting the permit, and the right of appellants and the department to produce additional evidence in this regard.

*By the Court.*—Judgment reversed, and cause remanded for proceedings not inconsistent with this opinion.