The Honorable Michael Ellis Chairperson Senate Committee on Organization 210 South, State Capitol Madison, Wisconsin 53702
Dear Senator Ellis:
You have asked for a formal attorney general opinion on behalf of the Senate Committee on Organization which in turn seeks the opinion on behalf of a constituent at your request.
The issue presented by the constituent is whether the State of Wisconsin has jurisdiction over property that was initially conveyed from the United States government by land patent. The constituent offers the following proposition: "If the patent issued contained no reservations by government, that land is in fact and law outside of the United States and its' [sic] jurisdiction. Government can not [sic] control anything that is outside of its jurisdiction."
As a fundamental matter, the proposition displays a basic misunderstanding not only of our federal form of government but also of the difference between property rights and governmental powers. First, under our constitution, the federal and state governments have separate and independent sovereignty. As stated in Coyle v. Smith, 221 U.S. 559, 567 (1911), "`This Union' was and is a union of states, equal in power, dignity, and authority, each competent to exert that residuum of sovereignty not delegated to the United States by the Constitution itself." When the federal government conveys land to a private individual, it cannot convey the state's powers with respect to the land. SummaCorp. v. California ex rel. State Lands Com'n, 466 U.S. 198, 205
(1984). Neither, when the federal government conveys land to a private individual, does it convey federal governmental power. It conveys title to the property, with or without restrictions or conditions. But any such restrictions or *Page 105 
limitations would be burdens on the private property interest, not on the state's coincident sovereign power.
Secondly, as discussed by the United States Supreme Court inUnited States v. State of Texas, 339 U.S. 707, 712, 719 (1950), the concepts of "dominium (ownership or proprietary rights) andimperium (governmental powers of regulation and control)" are "normally separable and separate." As a general rule, the transfer of dominium does not carry with it imperium. Therefore, the conveyance of dominium to a private party by federal land patent does not convey any sovereign powers of the federal government nor does it work a relinquishment of any such powers.
Of significance to the question at hand, there is a special qualification to the above rule where the transfer of navigable waters and land thereunder are involved:
 Dominion over navigable waters and property in the soil under them are so identified with the sovereign power of government that a presumption against their separation from sovereignty must be indulged, in construing either grants by the sovereign of the lands to be held in private ownership or transfer of sovereignty itself. For that reason, upon the admission of a state to the Union, the title of the United States to lands underlying navigable waters within the state passes to it, as incident to the transfer to the state of local sovereignty, and is subject only to the paramount power of the United States to control such waters for purposes of navigation in interstate and foreign commerce.
United States v. State of Texas, 339 U.S. at 717 (citation omitted).
This proposition is put in further perspective in the more recent case of Summa Corp., wherein the court stated:
 The Federal Government, of course, cannot dispose of a right possessed by the State under the equal-footing doctrine of the United States Constitution. Thus, an ordinary federal patent purporting to convey tidelands located within a State *Page 106 
to a private individual is invalid, since the United States holds such tidelands only in trust for the State.
466 U.S. at 205 (citation omitted).
In summary, in exercising its constitutional power to convey federal land to anyone, including private individuals, the federal government generally conveys only its proprietary rights. The federal government cannot convey a state's proprietary or sovereign rights, and in the case of navigable waters, the federal government cannot convey proprietary rights which are essentially tied to a state's sovereign rights in such waters. Your constituent does not provide any legal authority to support his views to the contrary.
Turning now to states' rights, article IV, section 3 of the United States Constitution provides among other things that "[n]ew states may be admitted by the Congress into this union" and "[t]he Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." As stated by the U.S. Supreme Court:
 The plain deduction . . . is that when a new state is admitted into the Union, it is so admitted with all of the powers of sovereignty and jurisdiction which pertain to the original states, and that such powers may not be constitutionally diminished, impaired, or shorn away by any conditions, compacts, or stipulations embraced in the act under which the new state comes into the Union, which would not be valid and effectual if the subject of congressional legislation after admission.
Coyle, 221 U.S. at 573.
In the Coyle case, the court effectively nullified a provision in the Act of Congress which admitted Oklahoma as a new state. The provision purported to designate the capital city for the new state and placed restrictions on redesignation. The Supreme Court stated that although Congress clearly has the authority to govern territories, that "[u]pon the admission of a State it becomes *Page 107 
entitled to and possesses all the rights of dominion and sovereignty which belonged to the original states."221 U.S. at 577. The Court held that since Congress would not have the power to regulate the designation of a state capital by exercise of any of its constitutional powers after admission of the state to the Union, the provision purporting to do the same thing in the act of admission was not enforceable. The Coyle case stands, therefore, as an acknowledgment of the separate and independent sovereignty of each of the states, including Wisconsin.
Because the constituent apparently relies on the relatively recent United States Supreme Court decision in Summa Corp., a brief review of that case may also be useful. In that case, SummaCorp. held fee title to the Ballona Lagoon, a narrow body of water connecting the Pacific Ocean and a manmade harbor in Los Angeles. Summa Corp. traced its title back to federal patent confirmation proceedings pursuant to an 1851 Act intended to implement the Treaty of Guadalupe Hidalgo in 1848. The treaty ended a war with Mexico, and the purpose of the Act was to settle claims of property ownership by Mexican landowners. Summa Corp.,466 U.S. at 202. The city alleged that it had a public trust easement in the Ballona Lagoon which enabled it to dredge the lagoon and make other improvements without having to exercise its power of eminent domain over petitioner's property. Summa Corp.,466 U.S. at 200. The public trust easement claimed by the state was described as follows:
 Through this easement, the State has an overriding power to enter upon the property and possess it, to make physical changes in the property, and to control how the property is used. Although the landowner retains legal title to the property, he controls little more than the naked fee, for any proposed private use remains subject to the right of the State or any member of the public to assert the State's public trust easement.
Summa Corp., 466 U.S. at 205 (citations omitted). *Page 108 
The United States Supreme Court held that the overriding purpose of the 1851 Act and the land patent confirmation proceedings thereunder was to provide "repose to land titles that originated with Mexican grants." Summa Corp., 466 U.S. at 206. The Court went on to hold that the "property interest" asserted by the state was so substantially in derogation of the fee interest patented to the initial grantees that the failure to assert it in the patent confirmation proceedings constituted waiver. Summa Corp., 466 U.S. at 205, 209.
It is important that your constituent is not making any arguments based on the same 1851 Act or treaty with Mexico or analogous circumstances. Summa Corp., 466 U.S. at 205-06. It is also important that there is no mention in the facts before us that the State of Wisconsin is asserting anything in the nature of a property interest in derogation of the constituent's asserted fee title. Rather the State of Wisconsin has apparently exercised its police power with respect to navigable waters and natural resources by way of Subchapter IV of Chapter 30 relating to the Lower Wisconsin State Riverway. This is presumably a reasonable exercise of the State's autonomous sovereign police power in this regard, and your constituent's chain of title is irrelevant under these circumstances. See Just v. MarinetteCounty, 56 Wis.2d 7, 18, 20, 26, 201 N.W.2d 761 (1972).
Finally, to provide yet further perspective, it is established that the state's police power may apply even to lands that are presently owned by the federal government. As discussed in California Coastal Com'n v. Granite Rock Co., 480 U.S. 572,581 (1987):
 Granite Rock suggests that the Property Clause not only invests unlimited power in Congress over the use of federally owned lands, but also exempts federal lands from state regulation whether or not those regulations conflict with federal law. In Kleppe, 426 U.S., at 543, 96 S.Ct., at 2293, we considered "totally unfounded" the assertion that the Secretary of the Interior had even proposed such an *Page 109 
interpretation of the Property Clause. We made clear that "the State is free to enforce its criminal and civil laws" on federal land so long as those laws do not conflict with federal law. Ibid. The Property Clause itself does not automatically conflict with all state regulation of federal land. Rather, as we explained in Kleppe:
 "Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory, but Congress equally surely retains the power to enact legislation
respecting those lands pursuant to the Property Clause. And when Congress so acts, the federal legislation necessarily overrides conflicting state laws under the Supremacy Clause." Ibid.
(citations omitted) (emphasis supplied).
Given that the state has jurisdiction to regulate lands that continue to be held by the federal government, it cannot logically be argued that the state has less jurisdiction over lands that the federal government has conveyed to private individuals. It is my opinion that your constituent does not enjoy greater legal stature than the federal government from which his title descends.
Sincerely,
 James E. Doyle Attorney General
JED:RWL:dah *Page 110